IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BYER CLINIC OF CHIROPRACTIC, LTD., and Illinois corporation, and ERIC B. FROMER CHIROPRACTIC, INC., A California corporation, individually and as the representatives of a class of similarly-situated persons,<br><br>                Plaintiffs,<br>v.<br><br>CANADIAN MEDICAL DIST INC. a/k/a MEDYKITS, a Canadian corporation,<br><br>                Defendant. | Civil Action No.<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**

Plaintiffs, BYER CLINIC OF CHIROPRACTIC, LTD. ("BYER CLINIC") and ERIC B. FROMER CHIROPRACTIC, INC. ("FROMER CHIROPRACTIC") (collectively "Plaintiffs"), through their attorneys, bring this action on behalf of themselves and all others similarly situated and, except as to those allegations pertaining to Plaintiffs or their attorneys, which allegations are based upon personal knowledge, allege the following upon information and belief against Defendant, CANADIAN MEDICAL DIST INC. ("CANADIAN MEDICAL" or "Defendant"):

**PRELIMINARY STATEMENT**

1. This case challenges Defendant's practice of sending "unsolicited advertisements" by facsimile.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JPFA"), 47 USC § 227 (here after "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent

fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3. On or about August 21, 2020, Defendant sent Plaintiffs BYER CLINIC and FROMER CHIROPRACTIC an unsolicited fax advertisement in violation of the TCPA, true and correct copies of which are attached hereto as Exhibit A-1 and Exhibit B-1 and made a part hereof. The Fax appears to be from "Medykits.com." However, upon information and believe, Canadian Medical Dist Inc. and Medykits are one in the same company.

4. On or about October 5, 2020, Defendant sent Plaintiffs BYER CLINIC and FROMER CHIROPRACTIC an unsolicited fax advertisement in violation of the TCPA, true and correct copies of which is attached hereto as Exhibit A-2 and Exhibit B-4 and made a part hereof. This Fax also appears to be from "Medykits.com."

5. On or about end of August/early September, 2020, on or about September 30, 2020, and on or about October 16, 2020, Defendant sent Plaintiff FROMER CHIROPRACTIC three unsolicited fax advertisements in violation of the TCPA, true and correct copies of which are attached hereto as Exhibit B-2, Exhibit B-3, and Exhibit B-6 and made a part hereof.

6. On or about October 15, 2020, Defendant sent Plaintiff FROMER CHIROPRACTIC an unsolicited fax advertisement in violation of the TCPA, a true and correct copy of which is attached here to as ExhbitB-5 and made a part hereof. This Fax also appears to be from "Medykits.com."

7. All of the Faxes advertise the availability and pricing of various personal protection products. (Exhibits A and B).

8. Upon information and belief, Defendant has sent, and continues to send, the Faxes and other facsimile transmissions of unsolicited advertisements to Plaintiffs and the Class in violation of the TCPA.

9. Unsolicited faxes damage their recipients. The recipient of an unsolicited fax (junk fax) loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. Unsolicited faxes intrude into the recipient's seclusion, violates the recipient's right to privacy, occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

10. Plaintiffs, on behalf of themselves and all others similarly situated, bring this case as a class action asserting claims against Defendant under the TCPA. Plaintiffs seek to certify a class which were sent the Faxes and other unsolicited fax advertisements that were sent without prior express invitation or permission and without compliant opt-out language (to the extent the affirmative defense of established business relationship is alleged). Plaintiffs seek statutory damages for each violation of the TCPA, injunctive relief, and attorneys' fees (under the conversion count).

11. Plaintiffs are informed and believe, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, and affiliates, and all persons and entities acting in concert

with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

13. This Court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district, has made contacts within this judicial district, and/or has committed tortious acts within this judicial district.

## PARTIES

14. Plaintiff, BYER CLINIC OF CHIROPRACTIC, LTD., is an Illinois corporation.

15. Plaintiff, ERIC B. FROMER CHIROPRACTIC, INC., is a California corporation.

16. On information and belief, Defendant, CANADIAN MEDICAL DIST INC., is a Canadian corporation with its principal place of business in Brantford, Ontario, Canada. On information and belief, Canadian Medical Dist Inc. also operates under the name MEDYKITS.

## FACTS

17. On information and belief, Defendant is for-profit company that provides various personal protection products.

18. On or about August 21, 2020, Defendant sent Plaintiffs BYER CLINIC and FROMER CHIROPRACTIC an unsolicited fax advertisement in violation of the TCPA. *See* Exhibit A-1 and Exhibit B-1.

19. The August 21, 2020 Faxes are identical and state in part the following:

4

"5% DISCOUNT ON ONLINE ORDERS
24/7 CHAT SUPPORT
www.medykits.com

The Fax then lists pricing on various products and provides three options for ordering:

"ORDER ONLINE           EMAIL ORDERS                    ORDER BY PHONE
www.medykits.com        ORDERS@CANMEDDIST.COM           312-801-4293"

20. On or about October 5, 2020, Defendant sent Plaintiffs BYER CLINIC and FROMER CHIROPRACTIC an unsolicited fax advertisement in violation of the TCPA. *See* Exhibit A-2 and Exhibit B-4.

21. The October 5, 2020 Faxes are identical and state in part the following:

**"USA Based PPE Distributor
Call us:  646-741-0063"**

The fax then lists pricing on various products and states at the bottom:

**"www.medykits.com
646-741-0063**

opt out of fax through www.namdist.com/dnf
or email us orders@canmeddist.com"

22. On or about the end of August/beginning of September, 2020, on or about September 30, 2020, and on or about October 16, 2020, Defendant sent three unsolicited facsimiles to Plaintiff FROMER CHIROPRACTIC using a telephone facsimile machine, computer, or other device. *See* Exhibit B-2, Exhibit B-3, and Exhibit B-6.

23. The on or about end August/beginning of September, 2020 Fax states in part the following:

"3% DISCOUNT ON ONLINE ORDERS
LIVE CHAT SUPPORT
WWW.NAMDIST.COM"

The Fax then lists pricing on its various products and provides three options for ordering:

"ORDER ONLINE  EMAIL ORDERS  ORDER BY PHONE
WWW.NAMDIST.COM  ORDERS@CANMEDDIST.COM  647 243 7978"

    24. The September 30, 2020 Fax states in part the following:

"5% DISCOUNT WITH CODE PPEFORME!
24/7 LIVE CHAT SUPPORT
WWW.NAMDIST.COM"

The Fax then lists pricing on its various products and provides three options for ordering:

"ORDER ONLINE  EMAIL ORDERS  ORDER BY PHONE
WWW.NAMDIST.COM  ORDERS@CANMEDDIST.COM  312-801-4293"

    25. The October 16, 2020 fax states in part the following:

"5% DISCOUNT WITH CODE PPEFORME!
24/7 LIVE CHAT SUPPORT
WWW.NAMDIST.COM"

The Fax then lists pricing on its various products and provides three options for ordering:

"ORDER ONLINE  EMAIL ORDERS  ORDER BY PHONE
WWW.NAMDIST.COM  ORDERS@CANMEDDIST.COM  646-741-0063"

    26. On or about October 15, 2020, Defendant sent Plaintiff FROMER CHIROPRACTIC an unsolicited fax advertisement in violation of the TCPA. *See* Exhibit B-5.

    27. The October 15, 2020 reads identical to the October 5, 2020 fax received by both Plaintiffs.

    28. All of the Faxes advertise the commercial availability of Defendant's various personal protection products.

    29. Plaintiffs did not give "prior express invitation or permission" to Defendant to send the Faxes.

30. On information and belief, Defendant faxed the same and other unsolicited facsimile advertisements without prior express permission or invitation and without compliant opt-out language to Plaintiffs and at least 40 other recipients.

31. There is no reasonable means for Plaintiffs (or any other class member) to avoid receiving unauthorized fax advertisements. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

32. Defendant's facsimile attached as Exhibit A does not display a proper opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

## CLASS ACTION ALLEGATIONS

33. In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiffs bring this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, (4) with whom Defendant did not have an established business relationship, and/or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendant, its officers, directors, shareholders, employees and agents, and members of the Judiciary. Plaintiffs seek to certify a class which includes but is not limited to the fax advertisement sent to Plaintiffs. Plaintiffs reserve the right to amend the class definition upon completion of class certification discovery.

34. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiffs are informed and believe, and upon such information and belief aver, that the number of persons and entities of the Plaintiffs Class is numerous and joinder of all members is impracticable. Plaintiffs are informed and

7

believes, and upon such information and belief avers, that the number of class members is at least forty. The precise number of class members and their identities are unknown to Plaintiffs but will be obtained from Defendant's records or the records of third parties.

35. <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

(a) Whether the Faxes and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(b) Whether Defendant meets the definition of "sender" for direct TCPA liability;

(c) Whether Defendant had prior express invitation or permission to send Plaintiffs and the class fax advertisements;

(d) Whether the Faxes and other faxes sent during the class period contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(e) Whether Defendant should be enjoined from faxing advertisements in the future;

(f) Whether Plaintiffs and the other members of the class are entitled to statutory damages; and

(g) Whether the Court should award treble damages.

36. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>: Plaintiffs' claims are typical of the claims of all class members. Plaintiffs received the same or other faxes as the fax advertisements sent by

8

or on behalf of Defendant during the Class Period. Plaintiffs are making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to Plaintiffs and all the class members by sending Plaintiffs and each member of the class the same or other faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

37. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs are interested in this matter, have no conflicts, and have retained experienced class counsel to represent the class.

38. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

    (a) Proof of Plaintiffs' claims will also prove the claims of the class without the need for separate or individualized proceedings;

    (b) Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

    (c) Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

    (d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small

claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

    (e)    This case is inherently manageable as a class action in that:

        (i)    Defendant identified persons to receive the fax transmissions and it is believed that Defendant's and/or Defendant's agents' business records will enable Plaintiffs to readily identify class members and establish liability and damages;

        (ii)    Liability and damages can be established for Plaintiffs and the class with the same common proofs;

        (iii)    Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

        (iv)    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

        (v)    A class action will contribute to uniformity of decisions concerning Defendant's practices; and

        (vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.*

39.    Plaintiffs brings this case on behalf of themselves and a class of similarly-situated persons.

40.    The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

41. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

42. **Opt-Out Notice Requirements.** The TCPA as amended by the JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(1) A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2) A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(3) A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

(4) The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and

regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon consumers and businesses, giving them the right, and means, to stop unwanted fax advertisements.

43. **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A. The definition of, and the requirements for, an established business relationship (EBR) for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

B. The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act, and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16); and

C. The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under

§ (b)(1)(C)(iii) of the Act, and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34).

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements cannot claim the exemption from liability contained in § (b)(C)(1) of the Act.

44. **The Faxes**. On or about August 21, 2020, the end of August/Early September, 2020, September 30, 2020, October 5, 2020, October 15, 2020, and October 16, 2020, Defendant sent the Faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiffs and members of the Plaintiffs Class. The Faxes constituted advertisements under the Act and the regulations implementing the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express invitation or permission and Defendant is precluded from sustaining the EBR safe harbor with Plaintiffs and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiffs and members of the Class. Plaintiffs seek to certify a class which includes these Faxes and all others sent during the four years prior to the filing of this case through the present.

45. **Defendant's Other Violations.** Plaintiffs are informed and believe, and upon such information and belief aver, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of

members of the Plaintiffs Class other faxes that constitute advertisements under the TCPA and its implementing regulations that were transmitted to persons or entities without their prior express invitation or permission and without complying with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder. Plaintiffs are informed and believe, and upon such information and belief aver, that Defendant may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

46. The TCPA provides a private right of action to bring this action on behalf of Plaintiffs and the Plaintiffs' Class to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

47. Although the TCPA is a strict liability statute, Defendant is liable to Plaintiffs and the other class members even if its actions were only negligent.

48. Defendant knew or should have known that (a) Plaintiffs and the other class members had not given prior express invitation or permission for Defendant or anybody else to fax advertisements promoting goods or services to be bought or sold; (b) Defendant transmitted advertisements; and (c) the Faxes and other faxes sent by Defendant did not contain the required Opt-Out Notice.

49. Defendant's actions caused damages to Plaintiffs and the other class members. Receiving Defendant's junk faxes caused Plaintiffs and the other recipients to lose paper and toner consumed in the printing of Defendant's fax. Moreover, Defendant's faxes occupied Plaintiffs' and the other class members' telephone lines and fax machines. Defendant's faxes

cost Plaintiffs and the other class members time, as Plaintiffs and the other class members and their employees wasted their time receiving, reviewing, and routing Defendant's unauthorized faxes. That time otherwise would have been spent on Plaintiffs' and the other class members' business or personal activities. Defendant's faxes intruded into Plaintiffs' and other class members' seclusion and violated their right to privacy, including their interests in being left alone. Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

WHEREFORE, Plaintiffs, BYER CLINIC OF CHIROPRACTIC, LTD. and ERIC B. FROMER CHIROPRACTIC, INC., individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendant, CANADIAN MEDICAL DIST INC. a/k/a MEDYKITS, as follows:

A.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.  That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the predicated acts constituting the violations are deemed "willful or knowing";

C.  That Court enjoin Defendant from additional violations; and

D.  That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Case: 1:20-cv-06210 Document #: 1 Filed: 10/20/20 Page 16 of 16 PageID #:16

Respectfully submitted,

BYER CLINIC OF CHIROPRACTIC, LTD. and
ERIC B. FROMER CHIROPRACTIC, INC.,
individually and as the representatives of a class of
similarly-situated persons

By: /s/ Ryan M. Kelly
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501
rkelly@andersonwanca.com